JANUARY TERM, 1882, No. 183.          MARCH 20TH, 1882.

# The Lombard and South Streets Passenger Railway Company *versus* Steinhart.

1. A child six years and six months old cannot be held responsible for contributory negligence.

2. In a suit by such a child against a passenger railway company for injuries caused by its being run over by one of the defendant's cars, there was evidence that the driver of the car was intoxicated; that he was driving at a rapid rate of speed; and that he was looking sideways, and talking to a man on the platform. The Court charged the jury: "If you find that the driver, at the time of the accident, was not looking at the track ahead of him, owing to his talking with a person on the platform, or to his looking around, or for any other cause, then this is evidence of negligence on the part of the defendant." *Held,* that it was not error.

3. The Court further charged: "If you believe that the injury in question was caused by the negligence of the driver in driving too rapidly, or in not watching the track, or in any other manner, and the injured boy had not capacity to appreciate the danger and avoid it, so far as any act on his part contributed to the injury, that incapacity shields him from responsibility for any act of his contributing to the injury, although such act would have been contributory negligence in an adult, defeating his recovery, and your verdict should be for the plaintiff." *Held,* that it was not error.

4. The Court further charged: "If you believe the injured boy, in trying to run across the street at the crossing, acted according to the habitual impulse of a child of his age, under all the circumstances, and the defendant was guilty of negligence in any of the modes aforesaid, or otherwise, and the injury resulted therefrom, your verdict must be for the plaintiff." *Held,* that it was not error.

5. The Court declined to charge that: "If the jury believe from the evidence that the plaintiff ran between the horses and the dasher of the car, then this act caused the injury and the defendant was guilty of no negligence, and your verdict must be for the defendant." *Held,* that it was not error .

6. The Act of April 4th, 1868, limiting the amount of damages to be recovered, is unconstitutional as to a company which, by resolution of its stockholders, formally accepted the provisions of the act prior to the adoption of the constitution of 1874.

7. Central Railroad Co. of N. J. *v.* Cook, 1 W. N. C., 319, and Passenger R. W. Co. *v.* Boudrou, 11 Norris, 475, followed.

8. The conductor of the car having testified for the defendant that he and the driver were both sober at the time of the accident, and the driver was probably capable of taking care of the car, the Court permitted counsel for plaintiff, upon cross-examination, to ask him what time he and the driver went to work that morning, and what time they made the last trip the night before. *Held,* that it was not error.

[The Lombard and South Streets Passenger Railway Company *v*. Steinhart.]

Before MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ. SHARSWOOD, C. J., absent.

Error to the Court of Common Pleas, No. 1, for *Philadelphia County.*

Case by Myer Steinhart, by his next friend and father, Philip M. Steinhart, against The Lombard and South Streets Passenger Railway Company, to recover damages for injuries to the plaintiff, alleged to have been caused by the negligence of the employés of the defendant.

Upon the trial in the Court below, before PEIRCE, J., the following facts appeared:

The plaintiff, a child six years and six months old, living with his parents at 532 South Street, in Philadelphia, was sent by his father, on the 21st of August, 1880, to the northeast corner of Sixth and Lombard streets to bring a doctor for his mother, who was ill. It was about 5.45 P M. On returning from the drug store he attempted to cross from the north side of Lombard Street to the south side. One of the cars of the defendant was going eastward on Lombard Street, and it ran over the plaintiff, crushing both of his legs. He was taken to the Pennsylvania Hospital and both of his legs were amputated above the knees. The testimony as to how the accident occurred was conflicting.

*Isaac Silberman*, for the plaintiff, testified, *inter alia :* "The boy came out of the drug store and ran over the street. The car came quick, and the horses knocked him down, and a man came and picked him up. The horses went so fast that he could not get past. So far as I saw the horses were going too fast. . . . . . He was crossing nearly at the corner. The horses were going too quick. . . . . . The driver was a little tight; if not, he could have stopped the car. The horses were going fast. The car was going faster than they usually go. He turned the brake after the child was under the horses. There was a man standing on the platform, I think, and the driver was talking to him. The driver was looking sideways, and, if he had been looking ahead, he could have stopped the car."

On cross-examination he said:

"The boy crossed at the usual place. . . . . . I saw the horses knock the child down. . . . . . The horses ran into the child."

*Elizabeth Riley*, for the plaintiff, testified, *inter alia :* "The driver was whipping his horses and going fast."

*George Burnell*, for the plaintiff, testified, *inter alia :* "My attention was drawn to the car by the unusual rate of speed the car was going at . . . . . The driver in particular was

[The Lombard and South Streets Passenger Railway Company *v.* Steinhart.]

under the influence of liquor. He was drunk and unfit to take charge of the car. I know the driver."

*Eben Cooper,* for the plaintiff, testified, *inter alia:* "The driver looked like as if he was intoxicated. . . . . . The car was coming down faster than usual."

*Charles Bassett,* for the plaintiff, testified, *inter alia:* "I saw the boy coming out of the drug store, and either the horses or the pole struck the boy, I could not see which."

*Henry M. Wetherill, Jr.,* for the plaintiff, testified that he was surgeon at the hospital, and described the injuries and amputation. On cross-examination he said:

"I observed slight bruises only on body, such as might have been occasioned by falling."

*Thomas Burns,* for the defendant, testified, *inter alia:* "I was conductor of the car. . . . . . We crossed Sixth Street at the usual rate. There was a car going down Sixth Street. The driver slacked up to let this car pass. He did not have time to get up fast rate after the Sixth Street car passed. . . . . . The accident occurred just below Sixth Street. The crossing was clear. The driver, when we had crossed Sixth Street, put the brake on with such force as to throw me in the doorway. I jumped off and found the boy clear of the car in the centre of the track. . . . . . He was some distance from the flagstones,—the length of the car from the flagstones. Boy was sitting up with back to south track. . . . . . To the best of my knowledge he (the driver) was in a sober condition. He was probably capable of taking care of the car. I was perfectly sober."

*Robert Moore,* for the defendant, testified, *inter alia:* "I was a car driver. . . . . . A Sixth Street car was passing there. I braked up a little until the car passed. . . . . . I then looked ahead. I had a clear track,—nothing ahead. When I got on the other side of Sixth Street, about six feet from the crossing, was an iron plate or covering. I recollect the little head laying there on the plate in the middle of the track. I could not pick the boy up, but I braked the car as quick as I could. It was six feet from the east side of the crossing. I never saw a bit of the child until I saw him between the swingle-tree and the dasher on the ground. He was lying in the middle of the track, six feet east of the flagging, between the swingle-tree and the dasher. The pole could not have knocked the child down."

On cross-examination he said:

"The first I saw of the boy he was lying between the two tracks, about six feet from the crossing. His head was east, and was about the plate."

*Thomas Burns* being recalled, upon cross-examination was asked:

[The Lombard and South Streets Passenger Railway Company v. Steinhart.]

" Q. What time did you and the driver go to work on that morning?"

Under objection and exception the witness answered, " About 6.30."

" Q. What time did you make your last trip the night before?"

Under objection and exception the witness answered : " I couldn't say that I was working the night before. The car finished its trip the night before about thirteen minutes after twelve, midnight, if it was on time, and started out at 6.30 next morning. The depot is at Twenty-fifth and South streets."

*Charles Kerschner*, for the defendant, testified, *inter alia :* "I saw a little boy running across the street. . . . . . He was from the drug store. He was going across the street south. . . . . . I saw the boy knocked down and car went over him. He seemed to have something white in his hand. . . . . . The car was coming across Sixth Street. The boy was running across the street, and ran between the dasher and the swingle-tree of the car and was knocked down. That was the last I saw of him until the car ran over him. He was then about three feet east of the flagging-stones on Sixth Street, when he ran between the swingle-tree and the dasher."

On cross-examination he said : " I think the boy ran between the horses and the dasher. Behind the horses is a swingle-tree. . . . . . The space between the dasher and the swingle-tree is a foot and a half. The boy ran in this space."

*William J. Mitchell*, for the defendant, testified, *inter alia :* " At the hospital the boy made a remark, when his father came to him and spoke to him, ' Poppy, I did not see the car, or I should not have run into it.' "

There was further testimony that the car was going at an ordinary rate of speed. The defendant, at a special meeting of the stockholders, held April 20th, 1870, had by resolution accepted the provisions of the Act of Assembly of April 4th, 1868.

*Philip Steinhart*, for plaintiff, testified, in rebuttal : " The child was lying in the hospital. He said, ' I did not see the car.' He said, ' If I had it would not have happened.' "

Counsel for plaintiff asked the Court to charge, *inter alia :* " 3. If you find that the driver, at the time of the accident, was not looking at the track ahead of him, owing to his talking with a person on the platform, or to his looking around, or for any other cause, then this is evidence of negligence on the part of the defendant.

" 4. If you believe that the injury in question was caused

[The Lombard and South Streets Passenger Railway Company *v.* Steinhart.]

by the negligence of the driver in driving too rapidly, or in not watching the track, or in any other manner, and the injured boy had not capacity to appreciate the danger and avoid it, so far as any act on his part contributed to the injury, that incapacity shields him from responsibility for any act of his contributing to the injury, although such act would have been contributory negligence in an adult, defeating his recovery, and your verdict should be for the plaintiff.

" 5. If you believe the injured boy, in trying to run across the street at the crossing, acted according to the habitual impulse of a child of his age, under all the circumstances, and the defendants were guilty of negligence in any of the modes aforesaid, or otherwise, and the injury resulted therefrom, your verdict must be for the plaintiff."

The Court affirmed these points.

Counsel for defendant asked the Court to charge, *inter alia:*

" 6. If the jury believe from the evidence that the plaintiff ran between the horses and the dasher of the car, then this act caused the injury, and the defendant was guilty of no negligence, and your verdict must be for the defendant.

" 7. In no event can the plaintiff recover more than three thousand dollars."

The Court refused these points, and charged the jury, *inter alia:*

"The question for you to arrive at in the first instance is, was this injury caused by the defendant company? Now, you have heard the evidence upon that point. The rule of law touching injuries of this character is that the party who is responsible for it must have been guilty of negligence. If there was no negligence on the part of the company, causing the injury, then there is no responsibility; and there is another principle of law, not only must that be so, but in ordinary cases there must have been no contributory negligence on the part of the plaintiff who has suffered the injury; because, if he contributed to his own injury, even slightly, the law says he can have no recovery for that which was partly his own act. In other words, the law will not measure the extent of the responsibilities where there has been contributory negligence on the part of the plaintiff. . . . As you shall find whether this accident was caused through the negligence of the driver, or by one of those unavoidable circumstances, or series of circumstances, by which an accident occurred without fault, that is, without such fault as the law recognizes, on their part, so should be your verdict. If the accident was caused by the agent of the company—the driver—through his want of attention, through his want

of diligence, through his want of care, and if by any want of care which he could have exercised, or want of any attention, or if by any attention which he could have exercised, or any care which he could have exercised, the accident could have been prevented, but which occurred from want of this care and attention, then the company would be liable.

"Now, relatively to the duty of care on the part of the boy, the Supreme Court has said, in a case which is well known, which is also a city passenger railway company, where a child of ten years of age leaped off the front platform of the car and was injured, the Supreme Court said the plaintiff was a mere boy, and the law, because of his tender age and inexperience, does not exact of him the same degree of care and prudence that it does of a person of mature years. A boy's capacity is a measure of his responsibility, and if he has not the ability to foresee and avoid the danger to which he may be exposed, negligence will not be imputed to him if he unwittingly exposed himself to it.

"Now that appears to be the law, gentlemen, with respect to the responsibility of a boy, so far as the question of contributory negligence is concerned. You will look at all the facts of the case, gentlemen, with that care that they deserve, and with that attention which I am sure you have already manifested in listening to the evidence in the case, and I am sure you will endeavor to do justice between these parties.

"In determining the case, you are not to press down upon the defendants because they happen to be a corporation, nor because they happen to be a street railway company. We have our duties, and they have their rights, as this little boy has his rights. And we are bound to do justice between the parties.

"Such companies are compelled, of necessity, to intrust the management of their cars to other people, and I suppose, ordinarily, they endeavor to do the best for themselves and for the public, in that respect, that they can. Their own interests would seem to induce them to do as well as they can for themselves, as well as for others; at the same time, they are bound to be careful in the selection of their servants, and not put an intemperate man upon their cars; not to put careless men upon their cars; not to put incompetent men upon their cars; but to exercise such discretion and judgment as will tend to protect the citizen from injury by reason of that fact. And also, gentlemen, there would seem to be a duty with respect to a car approaching a crossing—a street crossing—of a more stringent character than

[The Lombard and South Streets Passenger Railway Company v. Steinhart.]

when running ordinarily along a street at a place where there is no crossing. Of course, the driver must at all times see what is ahead of him. Children are sometimes in the street, in the middle of the square, going across the street, and injuries not infrequently happen. Therefore, there should be diligent attention and care at all points along the highway; but when the car approaches a crossing, it approaches a point where the citizen has a right of way to cross the street, and where he would naturally expect to find people crossing, and he should therefore give, if possible, a more strict attention to the discharge of his duty at that point than at any other place, whilst it is incumbent upon him at all times to be careful in the discharge of his duties."

Counsel for defendant excepted to the answers to the above points.

November 3d, 1881. Verdict for the plaintiff for $4000, upon which judgment was subsequently entered.

The defendant then took out a writ of error, assigning as errors the admission of the evidence under exception and the answers to the points as above.

*Mayer Sulzberger* and *William Rotch Wister*, for plaintiff in error.

The evidence admitted was held to be error in Railway Co. v. Henrice, 11 Norris, 431.

The fact that the questions were asked in cross-examination did not make them less irrelevant: Floyd v. Bovard, 6 W. & S., 75; Mitchell v. Welsh, 5 Har., 339.

They did not tend to show bias or interest, and were designed to prejudice the jury: Hopkinson v. Leeds, 28 P. F. Smith, 396; Helser v. McGrath, 2 P. F. Smith, 531.

Plaintiff's points were stated in words too vague and general. The words " or for any other cause," " or in any other manner," and " or otherwise," should have been restricted to something that did, in fact, contribute to the accident. If the third point was properly affirmed, a driver can in no case properly look anywhere except at his horses' heads.

As to defendant's sixth point:

There were two kinds of negligence charged in plaintiff's testimony:

*First.* Fast driving.

*Second.* Drunkenness of the driver.

But no matter how drunk a driver may have been, or how fast he may have driven, in the case submitted by the point neither the drunkenness nor the fast driving caused the boy to run into the car, and such drunkenness or fast driving

[The Lombard and South Streets Passenger Railway Company v. Steinhart.]

was, in such a case, no part of the accident. We asked the judge to say, that, if the jury believed from the evidence that the plaintiff ran between the horses and the dasher of the car, this act caused the injury.

Surely, the learned judge should have affirmed it as put, instead of refusing it; for the same mischief would have been caused whether the car was going fast or slow.

The intoxication and fast driving are, therefore, merely conditions, just as the position of the plaintiff in Boudrou v. Passenger Railway Company, 11 Norris, 475, was a condition: Fairbanks v. Kerr, 20 P. F. Smith, 86; Railroad Co. v. Boyer, 9 W. N. C., 497; Goshorn v. Smith, 11 Norris, 435; Baker v. Fehr, 10 W. N. C., 56.

As to defendant's eleventh point:

The defendant having accepted the Act of Assembly of April 4th, 1868, the act became a part of its charter, and the Constitution of 1874 was inoperative. For this reason, and because the plaintiff had, in fact, been guilty of contributory negligence, this case is distinguished from Railroad v. Cook, 1 W. N. C., 319; Passenger Railway Co. v. Boudrou, 11 Norris, 475.

The decision in Boudrou's case was pronounced with hesitation, and should be reviewed. Is it in violation of any constitutional provision to limit the application of the rule *respondeat superior*: Kirby v. R. R. Co., 26 P. F. Smith, 509; Rickard v. R. R. Co., 8 Norris, 193; Elliott v. City of Phila., 25 P. F. Smith, 347; Erie v. Caulkins, 85 Pa. St., 247; Norristown v. Fitzpatrick, 8 W. N. C., 459; Freeman v. City of Phila., 7 W. N. C., 45.

*S. Edwin Megargee* and *Richard P. White*, for the defendant in error.

The defendants below, having asked the witness as to his own and the driver's condition on that day, it was competent for us, in cross-examination, to ask the witness as to any circumstances which might qualify his testimony-in-chief, or which might test his accuracy, capacity, intelligence, bias, or reliability.

There is scarcely any limit to the extent to which cross-examination may go. It is left to the sound discretion of the judge trying the case: Jackson v. Litch, 12 P. F. Smith, 454; Henderson v. Hydraulic Works, 9 Phila., 100; Clark v. Trinity Church, 5 W. & S., 266; Yeager v. Weaver, 1 Leg. Gaz., 156; Ott v. Houghton, 6 C., 452; Cameron v. Montgomery, 13 S. R., 128; Commonwealth v. Eaton, 8 Phila., 428.

[The Lombard and South Streets Passenger Railway Company v. Steinhart.]

Plaintiff's points followed: R. R. Co. *v.* Mulhair, 6 W. N. C., 508 ; R. R. Co. *v.* Hassard, 25 P. F. Smith, 311.

If the company defendant was guilty of negligence, and the boy had not capacity to appreciate the danger, and avoid it, then, so far as any act on his part contributed to the injury, that incapacity shields him from responsibility, and does not defeat his recovery: Passenger R. Co. *v.* Hassard, 25 P. F. Smith, 367 ; Crissey *v* Passenger R. Co., Ibid., 83 ; Passenger R. Co. *v.* Caldwell, 24 Ibid., 421 ; N. P. R. Co. *v.* Mahoney, 7 Ibid., 187 ; Pa. R. R. Co. *v.* Kelly, 7 C., 372.

Counsel for the defendant below, in its sixth point, not only asked the Court to decide what caused the accident, but also that their client had been guilty of no negligence.

If the Court had affirmed this point, it would have removed from the jury a most important and vital point in the controversy: Pa. R. R. Co. *v.* Bock, 12 Norris, 427.

APRIL 3D, 1882.—PER CURIAM : In view of the fact that the plaintiff had not reached an age to exercise discretion in avoiding the danger, he could not be held responsible for contributory negligence. The main question, then, was whether the negligence of the railway company caused the injury. While some of the evidence was conflicting, yet there was amply sufficient, if believed, to justify the jury in finding it as a fact. There was evidence that the driver of the car was intoxicated, and driving at a rapid rate of speed, without giving that attention to the observance of any object on the track which his duty required. The case was well submitted to the jury, in a full and adequate charge. There was no error in the answer to the eleventh point. We adhere to our decisions as to the unconstitutionality of the Act of 4th April, 1868, limiting the amount to be recovered as declared in Central Railroad Co. of N. J. *v.* Cook, 1 W. N. C., 319, and Passenger Railway Co. *v.* Boudrou, 11 Norris, 475.

Judgment affirmed.