## Donaldson *versus* Commonwealth.

95　　21
f221　　⁵ 15

1. It is an essential constituent of a Court of Oyer and Terminer that not less than forty-eight jurors shall be summoned, to serve as petit jurors, as directed by the Act of April 14th 1834.

2. Where the precept and venire issued from the Quarter Sessions for only · thirty eight jurors, although the trial proceeded in other respects according to the forms of the Oyer and Terminer, it is void for want of jurisdiction. And it is immaterial that the number of jurors actually returned was not exhausted.

3. The omission to return the proper number of jurors is fatal to the constitution of the court, and the certificate of a cause from the Quarter Sessions into a court so composed is inoperative to effect the transfer. It is not such a defect, therefore, as is cured by the provisions of the Act of March 31st 1860.

4. *It seems*, that where a case is certified from the Quarter Sessions to the Oyer and Terminer the certificate may be filed, *nunc pro tunc*, after the trial.

5. Per GREEN, J.—" We cannot forbear remarking that, in our opinion, the physician, who on the day after an alleged rape was committed examined the person of the girl, should have been called as a witness and required to testify by the district attorney. Whether his evidence tended to acquit or convict, it was demanded equally by the cause of humanity on the one hand or of justice on the other."

May 27th 1880. Before MERCUR, GORDON, TRUNKEY, STERRETT and GREEN, JJ. SHARSWOOD, C. J., and PAXSON, J., absent.

Error to the Court of Oyer and Terminer of *Warren county:* Of May Term 1879, No. 60.

Indictment of Irvine Donaldson for rape. The indictment was found in the Quarter Sessions, and the court made an order which was entered on the docket of the Quarter Sessions, that " this case is certified to the Court of Oyer and Terminer," but no certificate was filed among the records of the Court of Oyer and Terminer until some time after the trial, when a formal certificate was filed *nunc pro tunc*. There was no separate docket of the Court of Oyer and Terminer, but it was the practice to enter the proceedings of said court on the docket of the Court of Quarter Sessions. The judges of the latter court are also, by virtue of their commissions, the judges of the Court of Oyer and Terminer.

The trial was before Wetmore, P. J., and Connelly and Acocks, A. JJ. The prosecutrix was a girl about thirteen years of age,

and although the physician who attended her and examined her person was present at the trial, he was not called by either party.

The defendant submitted the following point, which the court refused :—

"There can be no conviction in this case when the alleged violence was committed on a girl only thirteen years of age, and the physician who examined her the next day was in court during the trial, until the prosecution closed their evidence in chief, and was not called by the Commonwealth to prove that violence had been done to the prosecutrix."

The jury rendered a verdict of "guilty."

It was afterwards discovered that the precept and venire had issued for thirty-eight petit jurors, returnable to the Quarter Sessions, while the Act of April 14th 1834, section 113, required that not less than forty-eight petit jurors should be summoned to serve in a Court of Oyer and Terminer. For this reason and on the ground that no certificate to the Oyer and Terminer had been filed, the defendant moved in arrest of judgment and for a new trial. A rule to show cause was granted, and after argument discharged, the court holding that although the venire was irregular, yet after a trial on the merits, without objection, the defect was cured by virtue of the Act of March 31st 1860, section 53. After citing Jewell v. Commonwealth, 2 S. & R. 300, and Fife v. Commonwealth, 5 Casey 429, the court, in discharging the rule, said :—

"The language of the act is clear and explicit. No verdict in any criminal court shall be set aside, nor shall any judgment be arrested or reversed for any defect or error in the precept issued by the court, or the venire for the summoning or returning of jurors, but a trial on the merits shall be a waiver of all errors and defects in relation or appertaining to the said venire, drawing, summoning and returning of jurors. The defect or error in the present case is in the venire. It should have issued for at least forty-eight jurors. If the defendant had declined to go to trial or moved to quash the array, the trial would probably have been postponed or the array quashed. But going to trial by the forms and with the challenges allowed in the Court of Oyer and Terminer, we are constrained to the conclusion from the letter of the statute and judicial construction given to the same, that after verdict, it is too late for this objection to prevail."

The court further held that under the authority of Brown v. Commonwealth, 28 P. F. Smith 122, the certificate to the Oyer and Terminer *nunc pro tunc* was properly allowed and sufficient.

The defendant took this writ and assigned for error, inter alia, that there was no Oyer and Terminer jury, and the court thus constituted had no jurisdiction to try the case; that there being no certificate transferring the case from the Quarter Sessions to the Oyer and Terminer, it was tried in the Quarter Sessions which had

[Donaldson v. Commonwealth.]

no jurisdiction to try such an offence; and the refusal of the defendant's point.

*R. Brown*, for plaintiff in error.—The 23d section of the Act of March 31st 1860, Purd. Dig. 388, remedies any defect or error in the precept issued from the court or in the venire issued for summoning or returning the jurors, but it does not apply to the case when neither precept nor venire for an Oyer and Terminer jury was issued. The venire was issued under a general order or precept, and for a Quarter Sessions jury, and no venire was ordered or issued for the number of jurors required in the Oyer and Terminer. None of the cases of irregularity cited by the court below apply. The case of People *v.* McKay, 18 Johns. 218, is analogous, where no venire had ever been issued, and it was held that there was an entire absence of authority in the sheriff and not any default of his which could be termed an irregularity.

Under the Act of 1860, a formal certificate is absolutely necessary to transfer the case to the Oyer and Terminer, or the latter court does not acquire jurisdiction. No consent can give jurisdiction: Dougherty *v.* Commonwealth, 19 P. F. Smith 286; Mills *v.* Commonwealth, 1 Harris 631. The rule in England seems to be that in a charge of rape there is not sufficient proof of penetration to constitute the offence, unless there be positive medical evidence of some sort of violence to the person: 2 Wh. & Stil. Med. J., sect. 279, 3d. The fact that a physician did examine the prosecutrix the day following the offence was committed, in the presence of and at the instance of her mother, after she accused the defendant of the act, and the physician was present in court during the trial, and was not called by the court, under the English rule ought to have acquitted the defendant, and the court should have affirmed the point.

*S. P. Johnson*, for the Commonwealth.—The defendant made all the challenges he wished, and there were other regularly summoned jurors in attendance whom he could have selected. The panel was not exhausted in the selection of the trial jury, and no talesmen were called. The defect was merely a harmless oversight. Whether if discovered it could have been taken advantage of is doubtful: Foust *v.* Commonwealth, 9 Casey 338. If it was a "defect in or relative to or appertaining to the venire" then the trial was a waiver of it. If the defect in the venire and shortage of jurors is not within the spirit and meaning and even the letter of the fifty-third section of the Criminal Procedure Act, it has failed to accomplish what it aimed at.

Brown *v.* Commonwealth, *supra*, rules the question of the certificate to the Oyer and Terminer. That the physician was present and equally accessible to either party, is admitted, and when the Commonwealth closed its evidence, the defendant's counsel were

[Donaldson *v.* Commonwealth.]

openly informed by the district attorney that he did not intend to examine him. The omission to call him was notice that his testimony was not considered valuable for the Commonwealth. Yet after full opportunity to ascertain just what it would be, we came to the same conclusion as to its value on our side. Have not we as much reason to say that their omission to call him was evidence of their client's guilt as they have to say that our not calling him was evidence of his innocence. The English rule never did obtain in this country, and it is believed no where else, since rape ceased to be a capital crime.

Mr. Justice GREEN delivered the opinion of the court, June 14th 1880.

We are of opinion that the first assignment of error is sustained, and the judgment must therefore be reversed. The defendant was tried in the Court of Quarter Sessions for an offence of which that court had no jurisdiction. This alone, however, would not have constituted a sufficient objection to the validity of the trial and sentence, after a verdict and after a certificate of the cause into the Oyer and Terminer. Had there been a legal and actual Court of Oyer and Terminer in session at the time the case was tried, we should have held the subsequent certificate of the cause into that court *nunc pro tunc* as sufficient, upon the authority of Brown *v.* Commonwealth, 28 P. F. Smith 122. But in point of fact there was no legally constituted Court of Oyer and Terminer in session, or capable of sitting at the time of the trial. The Act of 14th April 1834, sect. 113, provides that "the number of persons who shall be summoned and returned, as aforesaid, to serve as petit jurors in any Court of Oyer and Terminer, shall not be less than forty-eight nor more than eighty, and in any other court of criminal jurisdiction not less than twenty-four nor more than sixty." Now to summon thirty-eight jurors to serve in a Court of Oyer and Terminer is not a mere defect or irregularity in the venire. Without a panel of forty-eight jurors, summoned and returned for service, an essential constituent of that court is wanting. If a panel of thirty-eight would be a sufficient compliance with the law we see no reason why a number still less would not suffice. The defect, or omission rather, is fatal to the constitution of the court, and hence the certificate of a cause from the Quarter Sessions into a court so composed, is inoperative to effect the transfer. This consideration distinguishes the present case from all those cited by the learned judge of the court below. We hold, therefore, that there was no valid trial and sentence, and must reverse the judgment for that reason. This decision makes it unnecessary to consider the other errors assigned. We cannot forbear, however, remarking that, in our opinion, the physician who, on the day after the occurrence, examined the person of the girl upon whom the offence was

[Donaldson *v.* Commonwealth.]

alleged to have been committed, should have been called as a witness and required to testify by the district attorney.    Whether his evidence tended to acquit or convict, it was demanded equally by the cause of humanity on the one hand, or of justice on the other. We say this more especially because there was no direct evidence of the factum of the crime, and no proof of actual penetration, the prosecutrix having testified that she was insensible and had no knowledge of what took place.    We do not reverse for this reason, and do not sustain the fifth assignment of error, which raises the question, but merely express our opinion as to what should have been done in the peculiar circumstances of this case.

Judgment reversed, and *venire facias de novo* awarded.