## Achille Onofri, Plff. in Err., v. Commonwealth of Pennsylvania.

Upon the trial of an indictment for murder it is proper to read the indictment to the jury.

The action of the court below in refusing to compel the commonwealth to call a witness whose name is indorsed on the indictment and who is present in court under subpœna of the commonwealth is not reviewable on writ of error.

It is not error to permit the jury in a capital case to take out with them the indictment on which are indorsed a conviction of murder in the first degree upon a former trial and a subsequent order granting a new trial.

(Argued March 24, 1887. Decided October 10, 1887.)

July Term, 1886, No. 94, E. D., before MERCUR, Ch. J.,

Cited in Com. v. Barry, 8 Pa. Co. Ct. 216, 218, and in Com. v. Bell, 20 Pa. Co. Ct. 223, 228, 7 Pa. Dist. R. 54.

NOTE.—All witnesses who can testify to material facts in a criminal proceeding should be called by the commonwealth. Rice v. Com. 102 Pa. 408; Donaldson v. Com. 95 Pa. 21. But this is not required when the testimony would be merely cumulative. Com. v. Keller, 191 Pa. 122, 43 Atl. 198. And the appellate court will not reverse where the evidence could have been presented by the defendant. Com. v. Morrison, 193 Pa. 613, 44 Atl. 913. In Com. v. Fry, 198 Pa. 379, 48 Atl. 257, the lower court refused to compel the commonwealth to call the son of the defendant, who was the only eyewitness of the murder, and he was subsequently called for the defense.

GORDON, PAXSON, TRUNKEY, GREEN, and CLARK, JJ.    Error
to the Court of Oyer and Terminer for Philadelphia County
to review a judgment on a verdict of guilty of murder in the
second degree on an indictment for murder.    Affirmed.

The defendant below was indicted for the murder of his step-
daughter, Carlotta Cook, nine years old.

At the second trial, before HARE, P. J., the verdict of guilty
of murder in the first degree at the first trial having been set
aside and a new trial granted, it appeared that the death of the
child was caused by a cruel and unmerciful beating inflicted on
her by the prisoner with a strap, a rope, a broom handle, and a
heavy coal shovel, because she was too weak and timid to prac-
tice walking the wire for acrobatic exhibitions.

The beating was done in the presence of her sister Mabel,
about the same age, and her brother, also a child.    There were
no other witnesses of the act.

Other facts are stated in the opinion.

The court charged, *inter alia,* as follows:

"I have just told you, in pursuance of the prisoner's request,
what you must do in point of law.    He now asks me to tell you
that you are the judges of that law.    To declare the law, in cases
of this description, is a duty which the law imposes on the court,
and in so doing it clothes the court with authority to declare the
law, and renders it the duty of the jury to heed the exposition of
the law by the court.    You have been sworn to try the cause
according to the law and the evidence, and it is your duty to
administer, not to make, the law.    By the law is meant the law
of the land—the law of Pennsylvania—and not what this or that
person supposes to be the law.    You are to determine from the
evidence what are the facts, and say whether they come within
the law.    In that sense you are the judges of the law and of
the facts."    (Fourth assignment of error.)

"I repeat what I said before,—that the law supposes that men
intend the consequences of their acts, and, when grievous bodily
harm is inflicted by means that are calculated to produce and
actually end in death, this is evidence of malice; and it is for
the defendant to point out on his side or the commonwealth's
something which may rebut the presumption of malice that
would otherwise naturally arise."    (Fifth assignment of error.)

"Taking the statements of the prisoner in conjunction with the testimony as to the condition of the body and the other evidence adduced by the commonwealth, I must confess that taking the commonwealth's case alone it appears to me that a pretty strong case is presented against the accused; but I must caution you again that you are the judges of the facts, and I only express my opinion to aid you. You will take it and consider it only as you regard it to be borne out by the evidence." (Sixth assignment of error.)

*William W. Ker* and *Joseph T. Ford,* for plaintiff in error.— In cases of felony, where the prosecutor does not think proper to examine any witness whose name appears on the back of a bill, the court will usually at the desire of the prisoner require such witness to be placed in the box as the witness of the Crown, in order that the prisoners may have the benefit of questioning him in cross-examination. This is not the practice in misdemeanors; nor is it a right in felonies. Hale, P. C. 157, note 6, referring to Reg. v. Vincent, 9 Car. & P. 91; Rex v. Beezley, 4 Car. & P. 220.

In criminal cases the jury are the judges of the law and the facts. Kane v. Com. 89 Pa. 522, 33 Am. Rep. 787.

The prisoner was entitled to have the court give a distinct, unequivocal, and unqualified answer to his point. Foster v. Collner, 107 Pa. 305; Huddleston v. West Bellevue, 111 Pa. 110, 2 Atl. 200.

Under our statute defining the degree of murder, the presumption against the accused rises no higher than that the homicide is murder in the second degree. Com. v. Drum, 58 Pa. 9.

Whenever it is sought to convict of murder in the first degree, the burden of proof is upon the commonwealth to show the circumstances necessary to raise the offense above murder in the second degree. Nor can this burden be shifted from the commonwealth upon the shoulders of the defendant. Murray v. Com. 79 Pa. 316.

If the tendency of the charge was to mislead the jury, it is ground for reversal. Bisbing v. Third Nat. Bank, 93 Pa. 79, 39 Am. Rep. 726; Pistorius v. Com. 84 Pa. 158; Pannell v. Com. 86 Pa. 260; Fawcett v. Fawcett, 95 Pa. 376.

The statements of the prisoner, referred to by the court, were what the prisoner had said to the officers and different other per-

sons at and before his arrest, according to the testimony of those persons called by the commonwealth to prove the statements.

A judge may rightfully express his opinion respecting the evidence. Kilpatrick v. Com. 31 Pa. 198; Johnston v. Com. 85 Pa. 65, 27 Am. Rep. 622.

But a judge may not express his opinion of the guilt of the prisoner, and instruct the jury to consider it as a part of the case.

It is error for the court in a capital case, in its charge to the jury, prominently to present the theory and strong points of the prosecution and ignore that of the defense. Goersen v. Com. 99 Pa. 388; Pauli v. Com. 7 W. N. C. 396.

The instruction of the court to the jury, "to pay no attention to the indorsements upon the indictment," may or may not have been regarded by the jury. How far the knowledge derived by the jury from the indorsements influenced them in arriving at a verdict, it is impossible to determine. The court had it in its power to keep that improper and unlawful knowledge from the jury, but refused to do so.

Articles offered in evidence during the trial may be taken out by the jury. Udderzook v. Com. 76 Pa. 351.

But in this case there was no necessity for handing the indictment to the jury against the protest of the prisoner.

*George S. Graham,* Dist. Atty., for the commonwealth.— From time whereof the memory of man runneth not to the contrary, the verdicts in the quarter sessions, and in the oyer and terminer courts in Philadelphia, have been indorsed on the bills of indictment.

In the case of Goersen v. Com. 99 Pa. 388, the first verdict was indorsed on the indictment as in this case, and according to the unvarying custom; and the bill so indorsed was handed to the jury, and the prisoner was convicted on the second trial of murder in the first degree. The case was brought here for review and judgment was affirmed. This point, however, while raised in the court below and overruled by the late Judge LUD-LOW (than whom there was no abler criminal-law judge in this commonwealth), was not assigned as error in this court.

The jury are entitled to have the indictment out with them. In fact they are entitled to have the whole record.

OPINION BY MR. JUSTICE PAXSON:

The first two assignments of error are without merit. It was entirely proper to read the bill of indictment to the jury. It is not pretended that it was not read precisely as it was found by the grand jury.

The third assignment alleges that "the court erred in overruling the motion made by the prisoner,—that the court direct the district attorney to call the name of Mabel Cook as a witness for the commonwealth; her name being indorsed upon the bill of indictment, she being present in open court under subpœna of the commonwealth.

It is a sufficient answer to this to say that a writ of error will not lie to such refusal of the court.

Nor do we find any error in those portions of the charge referred to in the 4th, 5th, and 6th assignments. It would be a waste of time to discuss them.

The 7th and last assignment alleges that the court below erred in allowing the bill of indictment with the indorsements thereon to go out with the jury, against the objection of the prisoner.

The bill of indictment is always sent out with the jury when they retire to deliberate upon the verdict. The whole difficulty was that the former conviction of the prisoner was indorsed upon the back of the bill. The first conviction had been of murder in the first degree. This conviction was not satisfactory to the trial judge, who set it aside and granted a new trial, upon the ground that the weight of the evidence was against the degree of murder as found by the jury. The record of the former conviction as well as the order granting the new trial was indorsed upon the back of the bill.

We learn from the docket entries in the case that the prisoner objected to the bill of indictment being handed to the jury with indorsements thereon made subsequent to the finding thereof; and that the objection was overruled and the jury instructed to pay no attention to the indorsements upon the indictment. The bill of exceptions is silent as to this matter; and as there is no exception the point is not properly before the court. As, however, the learned district attorney waived this omission, I do not hesitate to say that it has little merit. If there was poison, the antidote went with it. The order for a new trial showed that the conviction of murder of the first degree was wrong. Upon the second trial a conviction in the first degree was not claimed.

Aside from this, the learned judge below instructed the jury that they must entirely disregard the indorsements. We must assume that jurors have common sense and pay some regard to the instructions of the court.

The greatest effect that could be claimed for the indorsement is that it brought home to the knowledge of the jurors the fact that upon a former trial the prisoner had been convicted of murder of the first degree, and that such conviction had been set aside by the court. The chances are at least even that the jurors had such knowledge when they entered the box. In a case of homicide attracting as much attention as this one did, the fact of a former conviction must have been known almost to every man in the county; and those who did not know it probably could not read, and would be illy qualified for jury duty. It is not pretended that this knowledge acquired through the newspapers or from other sources would have been a ground of challenge to a juror; nor do I see any reason why it should invalidate a verdict because acquired from the indorsement on the bill of indictment.

Judgment affirmed.