Commonwealth *v.* Rosenberger, Appellant.

Argued April 12, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*James B. Ceris,* with him *Samuel L. Goldstein,* for appellant.

*Richard P. Steward,* District Attorney, for appellee.

OPINION BY WOODSIDE, J., June 11, 1957:

This is an appeal from the judgment of sentence imposed upon the appellant after his conviction by a

jury on charges of involuntary manslaughter and of failure to stop and render assistance.

The defendant made motions in arrest of judgment and for a new trial. The only grounds for a new trial assigned in the court below were that the verdict was against the weight of the evidence and against the law. The court below dismissed the motions and imposed sentence.

We have examined the record and conclude that there was sufficient evidence to sustain the conviction on both charges, and that the trial was conducted with fairness and without reversible error.

President Judge McCREARY of Beaver County who tried the case stated in his opinion as follows: "The record would justify the jury in finding that the defendant, while proceeding in a southerly direction along Duss Avenue in the Borough of Ambridge, State Highway Route No. 88, struck a pedestrian on the crosswalk leading from the east side of Duss Avenue to the West side thereof, when the pedestrian, now deceased, had reached a point somewhere in the southbound lane of traffic on Duss Avenue; that the automobile of the defendant carried the body of the struck pedestrian on its front bumper, or left front fender, from that point on Nineteenth Street and Duss Avenue, in a southerly direction, to the intersection of Duss Avenue and Twelfth Street, turned right on Twelfth Street going toward Merchant Street, a distance of a couple of city blocks, in the meanwhile crossing some railroad tracks on which was found the heel of one of the shoes of the deceased, turned right, or north, on Merchant Street and proceeded from that intersection to the intersection of Merchant Street and Laughlin Street to a point, just short of which, one of the shoes of the deceased was found, shook the body of the deceased off defendant's car by reason of the latter's automobile passing over a

404

slight depression in Merchant Street, and then proceeded to his home on Henrici Street, some distance away, without stopping."

George Brown, a witness for the Commonwealth testified that while he was traveling north on Duss Avenue at about 2:30 o'clock in the morning, the light on Nineteenth Street turned red and he stopped. As he did so an old man immediately started across the street walking slowly in front of his car. After the pedestrian had passed in front of his car, he saw a car approaching in the opposite direction at a speed too rapid to enable it to stop before hitting the pedestrian. Brown blew his horn to warn the pedestrian and the approaching car, but they both continued on until the car struck the man. The car continued down the street with the victim on it, veering first to its left, and then to its right. Then it stopped. Brown ran after the car on foot for about 15 yards. When he was within about 50 feet of where it had stopped, it started away, still carrying the victim on it. Brown went back to his car and turned it around, but by that time the car which struck the man had disappeared.

Brown was not sure whether the light had changed green before the car struck the man or not. He identified the defendant's car as the same make and model of the one which struck the victim. Although his testimony as to the light and the identification of the car was shaken on cross-examination, the weight to be given it was for the jury.

The defendant, who was taken into custody about two hours after the accident, admitted driving his car by the place where the accident occurred, at about the time the accident happened. The left head light on the defendant's car was broken, and the remaining glass taken from it was of the same composition and grain as the glass found at the scene of the accident. Human hair of the same type as that on the head of

the corpse was found on the car. There was other evidence on the car that it hit a person. The evidence produced at the trial would convince any reasonable person that it was the defendant's car which struck and killed the victim. As defendant admits that he was operating his car at the time and place of the accident it is reasonable to infer that he was the operator of the car which struck the victim.

Although it was night and raining the victim was crossing the street at an intersection. The defendant should have anticipated his presence there and should have seen him.

In his signed statement to the police the defendant said, "I was going south along Duss Ave. and the light changed green at 19th & Duss Ave. I was traveling about 45 M.P.H. when I got near Boirl Chevrolet I slowed down and there was a car Pulling from curb near X(?) Bros. I Pulled around him he almost pulled strait out. I went around him and a car was coming towards me he had bright lights—high beam— I had my high beam on but I put it on low Beam I almost came to a stoped I believe about 8 or 10 15 M.P. H.—there also was a new truck or automobile Parked on Duss Ave. If I hit anybody believe me I never felt it . . " From this and other evidence the jury could infer that the defendant was operating his car with the degree of recklessness necessary to establish the offense of involuntary manslaughter. That the defendant stopped after the accident, and then started away again before the man who was running toward him reached his car, is evidence from which it could be inferred he knew he had struck the victim.

The defendant had visited a number of taverns between 4 o'clock in the afternoon and the time of the accident, and had a number of beers during the evening, admitting to at least five. He claimed that the beers did not affect him.

The appellant contends that the trial judge erred in permitting evidence of beer drinking by the defendant during the evening of the accident. When the officers took him into custody he admitted drinking beer. They testified that he staggered when he first came to them, but they did not know whether it was from intoxication or from being aroused from his sleep. The officers testified that they could smell alcohol on defendant's breath when they took him into custody. This evidence was properly admitted. *Risbon v. Cottom*, 387 Pa. 155, 127 A. 2d 101 (1956); *Fisher v. Dye*, 386 Pa. 141, 148, 125 A. 2d 472 (1956); *Commonwealth v. Carnes*, 165 Pa. Superior Ct. 53, 57, 67 A. 2d 675 (1949).

The appellant contends that if the defendant was operating the car which killed the victim, the death was caused by the victim's negligence, and not by the unlawful conduct of the defendant. The victim's negligence is not an issue in this criminal case of manslaughter. The Commonwealth must, however, establish beyond a reasonable doubt that the unlawful conduct of the defendant was the proximate cause of the death, and the jury here was so instructed. See *Commonwealth v. Amecca*, 160 Pa. Superior Ct. 257, 50 A. 2d 725 (1947); *Commonwealth v. Hatch*, 149 Pa. Superior Ct. 289, 27 A. 2d 742 (1942).

We have carefully examined all of the evidence and the charge of the court. The defendant received a fair trial. We agree with Judge McCreary who said in his opinion: "If we were to charge the jury a second time, by reason of granting the defendant's motion for a new trial, we would be at a loss to know how we could charge the jury more fairly, adequately and correctly."

Judgment of sentence is affirmed and it is ordered that the defendant appear in the court below at such time as he may be there called, and that he be by that

court committed until he has complied with his sentence, or any part of it which had not been performed at the time this appeal was made a supersedeas.